CASE 5—INDICTMENT—FEBRUARY 14.

# Glackan vs. Commonwealth.

# Cornelius vs. Same.

APPEALS FROM KENTON CIRCUIT COURT.

In prosecutions for obtaining money or goods under false pretenses, the indictment must contain all the material facts and circumstances necessary to prove upon the trial in order to convict. It will not do to charge that the defendant obtained the goods or money by false pretenses, without stating what the false pretenses were. And some care must be observed in setting forth the pretenses, because they must be proved as laid.

It is essential to a conviction for obtaining property or money under false pretenses to allege and prove that the pretense, whereby the money or property was obtained, was a statement of some pretended past occurrence or existing fact, made for the purpose of inducing the party injured to part with his property. No statement or repre-

sentation of any thing to take place in future is a pretense within the meaning of the statute, whether it be in the form of a promise or not.

Where the false pretenses charged were, that if the owner would permit the defendants to take her cow and calf to market and sell the same, they *would* account for and pay over to the owner, or her daughter for her, the money received therefor; and that they, the defendants, *would* at their own costs and expense remove the owner from the house in which she then resided and provide her with another house free of rent—the indictment was held insufficient, the promises being to do future acts.

A. J. JAMES, Attorney General, for Commonwealth, cited *Wharton's Amer. Crim. Law,* sections 2144 *to* 2162; 1 *Greenleaf Ev.,* sections 197, 198, 199, 200; 1 *Stanton's Revised Statutes,* page 392.

CHIEF JUSTICE STITES DELIVERED THE OPINION OF THE COURT:

The appellants were jointly indicted in the Kenton circuit court for having obtained property under false pretenses; and having been tried and convicted, have severally appealed to this court.

The two cases present, substantially, the same questions, and will therefore be considered together.

The grounds relied on for reversal are—

1. That the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court; and that the court below erred in overruling the motion in arrest of judgment.

2. That error was committed to the appellants' prejudice, in instructing and refusing to instruct the jury; and,

3. That the circuit judge erred in excluding important evidence offered by appellants.

It seems to us that the first ground relied on is sufficient, and must prove fatal to both judgments.

The indictment is founded upon the following section of the *Revised Statutes,* (1 *Stanton's edition,* 392.)

"If any person, by any false pretense or token with intention to commit a fraud, obtain from another money, property, or other thing which may be the subject of larceny, or if he obtain, by any false pretense or token, with like intention, the signature of another to a writing, the false making whereof would be forgery, he shall be confined in the penitentiary not less than one nor more than five years."

It may be regarded as the established doctrine in prosecutions for obtaining money or goods under false pretenses, that the indictment must contain all the material facts and circumstances necessary to prove upon the trial, in order to convict. It will not do to charge that the defendant obtained the goods or money by false pretenses, without stating what the false pretenses were. And some "care must be observed in setting forth the pretenses, because they must be proved as laid. (9th Wendell, 191 ; 2 Maule & Selwyn, 587 ; 2 T. R., 581 ; 13 Wendell, 317.)

Cases of this kind belong to that class in which the particular circumstances of the offense charged are necessary to constitute a complete offense, and are therefore within that section of the Criminal Code which demands that the indictment must be direct and certain as to the particular circumstances of the offense. (Criminal Code, sec. 123.)

It is essential to a conviction, for obtaining property or money under false pretenses, to allege and prove that the pretense, whereby the money or property was obtained, was a statement of some pretended past occurrence or existing fact, made for the purpose of inducing the party injured to part with his property. No statement of any thing to take place in future is a pretense within the meaning of the act. (Archbold's Criminal Practice, 2d vol., 465 ; Bishop on Criminal Law, 2d vol., 345 ; Russell on Crimes, 2d vol., 305 ; Wharton Crim. Law, 727 ; Commonwealth vs. Haughey, page 223 of this volume.)

Where the false pretense charged was that the defendant would assign to A. B. a certain note which he had before that time, for a valuable consideration, passed to A. B., and that, by means of this false pretense he obtained the note with intent to cheat and defraud A. B., and then failed to assign or return the note to him—it was held that the indictment did not charge a false pretense, because the promise to assign the note was an agreement to do a future act, and not a misrepresentation as to an existing fact. (19th Pickering, 179 ; 5 Ohio Reports, 280.)

In the case of Rex vs. Goodall, (R. and Ry., 461,) cited in Archbold, supra, (2d vol., 611,) the prisoner bargained for the

carcasses of three sheep and some other meat, and, the seller having refused to trust him, promised to pay for them on delivery; but he did not mean to do so, and when they were delivered sent back an evasive letter. The indictment was for obtaining the carcasses and meat by falsely pretending he *would* pay for them on delivery, whereas he did not and never meant to do so; and he was convicted: but, upon a case reserved, the judges thought this was not a pretense within the statute—that it was merely a promise of future conduct, and, therefore, that the conviction was wrong.

Other authorities to the same effect might be cited, but it is deemed unnecessary.

An application of this well established principle to the indictment before us will at once show its insufficiency. The charges therein contained are as follows:

"The grand jury of Kenton county, in the name and by the authority of the Commonwealth of Kentucky, accuse John Cornelius and James Glackan of the crime of obtaining property by false pretenses, committed as follows: The said John Cornelius and James Glackan, in the county of Kenton and the Commonwealth aforesaid, on the — day of September, in the year of our Lord, 1860, and before the finding of this indictment did then and there falsely, fraudulently, and feloniously pretend and represent to one Phebe Mayguiar, in the county aforesaid, that if she, the said Phebe Mayguair, would permit them, the said John Cornelius and James Glackan, to take a certain cow and calf, then and there being the property of the said Phebe Mayguair, to the market and sell the same, they, the said John Cornelius and James Glackan, *would* account for and pay over to the said Phebe Mayguair, or to her daughter for her, the money received for said cow and calf; and also falsely, fraudulently, and feloniously pretending and representing that if the said Phebe Mayguair would allow them to sell said cow and calf as aforesaid, they *would*, at their own costs and expense, remove the said Phebe Mayguair from the house in which she then resided, and provide her with another house free of rent; did then and there, in manner and form aforesaid, unlawfully, fraudulently, and feloniously obtain and

procure the said cow and calf from the said Phebe Mayguiar, with the intent to commit a fraud; and the jurors aforesaid say that the said John Cornelius and James Glackan did not intend to account for and pay over to the said Phebe Mayguiar, or to her daughter for her use, the money received for said cow and calf, nor did they, or either of them, intend to remove the said Phebe at their own cost from the house then occupied by her, or provide her with another home free of rent, but each and all of said pretenses were false, fraudulent, and felonious, and were then and there well known to be so by the said John Cornelius and James Glackan, &c."

It will be observed that the only pretenses here complained of and relied on, relate to the payment of the proceeds of the cow and calf when sold, the procurement of another house for the party injured, and her removal thereto by the appellants free of cost and expense; and that the statements made by them are mere promises on their part to do and perform future acts, and, in no wise, relate to any pretended existing fact.

Statements of this kind, as we have seen, will not do. The rule is, that no representation of a future event, whether in the form of a promise or not, can be a pretense within the act. The pretense must relate either to the past or to the present.

In our judgment, therefore, the facts stated in the indictment do not constitute a public offense, and the motion in arrest of judgment should have prevailed.

In regard to the other grounds, it may be said that it is by no means certain that the exceptions taken by appellants present them to this court in the mode prescribed by the Criminal Code, and in which alone such grounds can avail for reversal. But inasmuch as the indictment is held insufficient to uphold the judgment, it is deemed unnecessary to discuss either the sufficiency of the exceptions or the grounds they were intended to present for revision.

For the error mentioned, the judgment in each of the cases is *reversed*, and cause remanded with directions to the court

below to sustain the several motions in arrest of said judgments, and for such other orders as may be proper, not inconsistent with the principles of this opinion.