### 27397.   HUTCHINS v. THE STATE.

JORDAN, Justice. Michael Hutchins appeals his conviction of murder and sentence to life imprisonment. The conviction is based on an incident in the vicinity of the Squire Inn Motel on Piedmont Avenue in Atlanta about 2:30

a.m. on May 6, 1971. Larry Melvin Stanford, a security guard, was shot and killed while investigating the presence of four men, including the defendant, in an automobile. The State prosecuted on the theory that Hutchins was directly or indirectly a party to the alleged crime, or that the alleged crime was a felony murder, the felony being a conspiracy between the defendant and three others to commit armed robbery which had not come to an end when the homicide occurred, and which was thereafter concealed. All four were accused in a single indictment, and Hutchins was tried separately.

1. The first six asserted errors are argued collectively. They are (1) that the trial judge erred in allowing an investigator to testify concerning a statement made by a co-indictee, Otis King, out of the presence of the defendant, the State having established no conspiracy, (2) that the trial judge erred in allowing the statement to be presented to the jury, no conspiracy being shown except possibly by the statement, (3) that the trial judge erred in not ruling as a matter of law that the State had failed to establish any conspiracy prior to the introduction of King's statement, (4) that the trial judge erred in allowing the jury to determine the existence of a conspiracy involving the defendant, (5) that the trial judge erred in failing to rule that a conspiracy, if any, had ceased to exist before King made a statement, and (6) that the trial judge erred in admitting a conversation between King and Wyatt, another co-indictee, which occurred out of the presence of the defendant.

Although *Code* § 38-306 states that after the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all, the requirement is not absolute. Justice Lumpkin, speaking for this court, stated: "While it may generally be the better practice to require a prima facie case of conspiracy first to be made, before admitting evidence of the acts and declarations of one of the alleged conspirators, there is no inflexible rule

to that effect. The trial court has some discretion as to the order in which testimony may be introduced; and if a prima facie case of conspiracy is shown from the whole evidence, the admitting of such testimony is not error." Continuing, he stated that "ultimately it is for the jury to determine whether, from the whole evidence, a conspiracy has been shown." *Coleman v. State,* 141 Ga. 731, 733 (82 SE 228). Slight evidence from an extraneous source identifying the accused as a participant in the criminal act will be sufficient corroboration of the accomplice to support a verdict. *Hargrove v. State,* 125 Ga. 270, 274 (54 SE 164). It may be circumstantial as well as direct. *Weaver v. State,* 135 Ga. 317 (1) (69 SE 488).

As to declarations, conversation overheard between co-indictees out of the presence of the defendant is admissible. *Harris v. State,* 184 Ga. 382, 392 (191 SE 439). And the acts, conduct, and statements of a conspirator, not only in the perpetration of a common criminal enterprise but in an effort at concealment, are admissible. *Byrd v. State,* 68 Ga. 661; *Rawlings v. State,* 163 Ga. 406 (2) (136 SE 448).

In our opinion the circumstances surrounding the homicide itself, i.e., the appearance of four men in an automobile, armed with a shotgun and pistols, at a motel in the early morning hours, and the sudden shooting of a security guard, per se, without any testimony or extrajudicial statements of any of the co-indictees, warrant a permissible inference of a conspiracy among them to perpetrate an armed robbery. Under the rules above stated, the rulings and actions of the trial judge here under consideration were authorized. It would serve no useful purpose to detail all of the evidence adduced during the entire trial, other than that of the co-indictees, which clearly authorizes a jury determination of a conspiracy and the killing of Stanford. The first six enumerations are without merit.

2. The next three enumerations are also argued collectively. It is asserted (1) that the trial judge erred in failing to grant a motion for mistrial based on the State's with-

drawal of a plea of entrapment while Herbert Willingham, a co-indictee, was testifying as a witness for the State, after the introduction of prejudicial statements by Willingham to impeach his testimony, (2) that the trial judge erred in allowing the statements by Willingham to remain in evidence after being introduced for impeachment only, and (3) that the trial judge erred in allowing the State to withdraw the plea of entrapment after having impeached Willingham.

A district attorney may impeach a witness voluntarily called by him if he shows to the court that he has been entrapped by the witness by reason of a previous contradictory statement. *Code Ann.* § 38-1801. The credibility of any witness is for jury determination under proper instructions. *Code* § 38-1805. The credit to be given the testimony of a witness impeached for contradictory extrajudicial statements is for jury determination. *Code* § 38-1806. Such statements may be allowed for impeachment purposes only. *Sparks v. State,* 209 Ga. 250 (2a) (71 SE2d 608); *Kemp v. State,* 214 Ga. 558 (2) (105 SE2d 582).

The record fails to reveal any motion for a mistrial because the State purported to withdraw a plea of entrapment, and counsel for the defendant makes no reference in his brief to a motion. The record does reveal a plea of entrapment by the State, a purported withdrawal of the plea after the witness admitted making statements inconsistent with his testimony, but no specific ruling thereon, and instructions by the trial judge to the jury that the contents of the previous written statement "will be submitted to you for your consideration for impeachment purposes only." In his final instructions he also stated that "if there was some evidence admitted solely for the purpose of impeachment, you should consider it for that purpose and not as establishing or proving the truthfulness or accuracy of such statement." At the conclusion of the final instructions counsel for the defendant was expressly afforded an opportunity for exceptions or suggestions to the instructions, to which he replied in the

negative. These enumerations are without merit.

3. Finally, it is asserted that the trial judge erred in giving certain instructions to the jury. The instructions as given were clearly authorized by the record and transcript. These enumerations are without merit.

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 13, 1972—DECIDED DECEMBER 4, 1972.

*John W. Rogers, H. Gilman Hudnall, Jr.,* for appellant.

*Lewis R. Slaton, District Attorney, Joel M. Feldman, Morris H. Rosenberg, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, Assistant Attorney General, Thomas W. Greene, Deputy Assistant Attorney General,* for appellee.